**HUMPHREYS, Plaintiff-Appellee, v. MADDEN, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1740. Decided March 5, 1943.

Jacobson & Durst, Dayton, for plaintiff-appellee.

Matthews, Matthews & Altick, Dayton, for defendant-appellant.

## OPINION

By BARNES, P. J.

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The action was one for personal injuries arising out of an automobile accident on State Route 68, about four miles south of Xenia, Ohio. The collision occurred on December 15, 1939, at about 7:30 P. M. The plaintiff, Forest O. Humphreys was driving his 1938 Ford coupe southwardly on said highway, and the appellant, Ray E. Madden, was driving his 1937 Ford coupe northwardly on the same highway.

At or near the scene of the accident the paved portion of the highway was approximately 23 feet in width. At this point there was a curve and the road was banked towards the east. The highway was wet, with a light rain or snow falling. The operators of both cars had windshield wipers operating. Each driver was alone. Each claimed that he was on his own right side of the road. Defendant admitted that the left front part of his car came in contact with the rear left part of plaintiff's car.

It was defendant's contention that plaintiff had been driving over on the wrong side of the road and sought to pull back but did not fully succeed and the collision occurred.

On the contrary plaintiff claimed that at all times he was driving on his own right side of the highway, and that defendant was improperly operating his car on the left or wrong side of the highway, and by reason thereof the automobiles collided causing the injuries and damages complained of.

Plaintiff sought damages in the sum of $7500.00.

At time of collision, the plaintiff was thrown from his car and rendered unconsicious. Subsequently he was taken to the hospital in Xenia, Ohio, by the State Highway Patrol. He had cuts and bruises about his face and injury to his leg. Later on the same day, plaintiff was taken to his home and the next day to Miami Valley Hospital where the wounds were dressed and sutured. He remained in the hospital only a short time and within a week or ten days went back to work.

Defendant suffered no personal injuries to speak of, but his car was considerably damaged. Defendant filed a cross-petition, seeking to recover $300.00 for damages to his car.

There were no eye witnesses to the accident. One witness, Mr. Bock, lived in close proximity to the scene of the accident and, hearing the crash, was at the scene very quickly. He met the two men, plaintiff Humphreys being assisted by the defendant Madden, and all went into his home, where the blood was washed from plaintiff's face. Either the same night or the next day this witness Bock testifies that there was a spot of oil upon the highway, somewhat egg-shaped, and approximately 2 feet in diameter. This oil was on the west side of the center line of the highway, and it is argued that this was oil from the broken crank case of defendant's car. If this be correct, it would place defendant's car on his wrong side of the highway. Counsel for defendant very clearly questions the existence of the oil spot, principally for the reason that no mention was made of it when the witness Bock's statement was taken a few days following the accident. Fur-

thermore, counsel for defendant argue that the oil spot, if it did exist, could just as easily come from plaintiff's car, since his differential was broken.

The jury returned a verdict in favor of the plaintiff for the sum of $1500.00. Thereafter the necessary steps were taken through which the case was appealed to our court.

Appellant sets forth five separately stated and numbered assignments of error.

Assignment of Error No. 1 reads as follows:

"The court erred, in overruling appellant's motion for a mistrial when appellee injected 'insurance' into the trial and in failing to instruct the jury to disregard it."

During the taking of testimony and while plaintiff was on the witness stand and being interrogated by his counsel, and immediately following plaintiff's narrative of his being in the hospital at Xenia, Ohio, his counsel made the following inquiry:

"Q. Did he, (Madden) at any time say anything to the nurse in your hearing about the accident?

A. As I was pretty well ready to get off the table, yes.

Q. And what did he say in your hearing?

A. He asked the doctor if I was getting along, If I was coming to, and he said he thought I was, so he said he might as well be going, or something to that effect, and he turned to the nurse and told her to see that I was taken proper care of and he would see his insurance company took care of it * * *"

. At this time counsel for appellant immediately moved for a mistrial, for the reason that plaintiff himself had injected the issue of defendant's insurance into the case. The trial court overruled the motion, without any instructions to the jury to disregard the question of insurance.

If the record presented nothing further on this question, we would be required to find prejudicial error.

Rupp v Shaffer, 21 C. C., 643.

Frank v Corcoran, 25 Oh App., 356.

Wilson v Wesler, Admx., 27 Oh App., 386.

Turner-Willis Motor Co. v Cales, 11 Abs., 329.

Mowery v Wileman, 25 Abs., 172.

Contract Cartage Co. v Kern, 20 Abs., 152.

Messenger v Karg, 49 Oh App., 244.

Hoge v Soissons, 48 Oh App., 221.

The Ohio courts have very generally determined that the general rule holding testimony as to insurance prejudicially erroneous has its exception in cases where the testimony tends to prove some material issue properly in the case. 17 O Jur, pages 216 and 217.

The instant case was clearly brought within this exception from the following:

After the court had overruled the motion for mistrial and ordered the trial to proceed, the following transpired:

"Mr. Jacobson: I don't think he had finished his answer when the counsel for the defendant objected.

Mr. Altick: What did he not finish about that answer?

Mr. Jacobson: (To witness) Q. Did he say anything further?

A. The balance of his sentence was 'for I guess I am to blame.' "

This latter part would clearly be a declaration against interest, and thereby tended to prove a material issue.

We find no prejudicial error under Assignment No. 1.

Assignment No. 2 reads as follows:

"The court erred in its charge to the jury."

Under this assignment the first complaint is made that the trial court in his charge erroneously used the following language:

"The court charges the jury that it is for you to determine and decide from the testimony given by the plaintiff and defendant whether or not the plaintiff in this case operated his automobile in a negligent and careless manner over onto the east side of said highway into the northbound traffic lane and collided with the automobile of defendant."

It is argued that through this charge the court limited the jury's consideration of plaintiff's negligence to the testimony of the plaintiff and defendant and that thereby defendant was deprived of the benefit of all the evidence in the case.

The language is unfortunate, but it is very doubtful if the jury would understand that the court was intending to limit

the consideration of this question to the testimony of the plaintiff and the defendant. We are convinced that the court was intending to refer to all testimony presented by either plaintiff or defendant and that the jury would so understand, regardless of the technical language.

Furthermore, it would appear that the only physical evidence, aside from the evidence of the plaintiff and the defendant, was the oil spot on the highway, and if this was considered by the jury it probably would be of more value to the plaintiff than to the defendant. Counsel for plaintiff complain that the trial court failed to clarify this charge with respect to plaintiff's right to recover by adding "and plaintiff himself must not be negligent," as was the court's language when it charged on defendant's right to recover.

It is properly argued that the same rule should be applied to both.

In reading the charge in its entirety, we find that the trial court did give the correct rule as it applied to both, although the applicable rule did not appear in their pertinent paragraph.

Counsel for appellant further complain that the court improperly charged the jury on the question of damages, that it might take into consideration compensation for physical and mental suffering, hospital and doctor bills, and such other bills as were incurred as a direct result of his injury, the loss of earnings, if any, his expenses for hospitalization, and so forth.

It is quite true that the trial court was in error in including mental suffering and loss of earnings, none of which were alleged as damages. However, we can hardly conclude that this erroneous part of the charge would be prejudicial, for the reason that nothing appears in the record suggesting any damages for mental suffering or any loss of earnings.

One or two other matters are mentioned in this assignment, but we do not consider them of sufficient importance to make reference thereto. There is no prejudicial error under this assignment.

Assignment No. 3 reads as follows:

"The court erred in failing to give the jury further instructions when requested so to do by the jury after it had started its deliberations."

The record discloses the following:

"During its deliberations, a member of the jury rapped

upon the door and handed the bailiff the following question to be answered by the court: And thereupon, in the Court's Chambers, in the presence of the Court, Mr. Jacobson, Attorney for Plaintiff, Mr. Altick, Attorney for Defendant, and the Stenographer, the following proceedings were had: THE COURT: The question from the jury is as follows: 'Is it possible for the jury to render such a verdict that both contributed negligence, but that Mr. Humphrey's expenses should be paid?'

Let the record show that the following answer was sent by the Court to the jury: 'It will be necessary for the jury to decide this case in accordance with the instructions already given by the Court to the jury.' "

Nothing further appears in the record. Counsel for plaintiff-appellee argue that this action of the court was taken by consent of counsel. As heretofore stated, the record does not disclose any such consent, nor does it disclose any objection. It is apparent that counsel for appellant in his motion for a new trial, did not argue this question as erroneous action on the part of the court.

Under the state of the record, we are inclined to think that the court should have answered this question, for the reason that the inquiry would lead to the positive belief that the juror or the jury did not understand the principle of law that if in fact both parties were guilty of negligence, and the negligence of each contributed to the accident and resultant injuries, that neither could recover. A statement in these general terms, would unquestionably have been beneficial to the jury. It is true that the court's general charge when analyzed would result in this pronouncement, but it is very doubtful if a layman, such as jurors are, would be capable of making such an analysis.

Sec. 11420-6 GC, is very broad in its provisions giving to jurors the right to receive further instructions from the court on questions of law as well as reviving recollection on questions of fact. However, under the state of the record we are unable to conclude that the trial court acted erroneously in the instant case.

Assignment of Error No. 4 reads as follows:

"The court erred in failing to require the jury to answer, the interrogatory of defendant as originally submitted, which interrogatory the jury changed before answering."

The interrogatory submitted to the jury reads as follows:

"Which driver was operating his automobile wholly or partly on his left side of the highway at the instant of this collision?"

The jury struck out the word "wholly" so that the interrogatory read:

"Which driver was operating his automobile partly on his left side of the highway at the instant of the collision?"

The jury's answer was, "Ray Madden."

The legislative enactment relative to submission of interrogatories will be found in §§11420-17 and 11420-18 GC. Under these sections it is mandatory for the court to submit the interrogatories provided always that they are germane to the issue.

We doubt very much if the interrogatory as submitted was properly worded to meet the situation to which the evidence was directed.

The jury might very readily without making any alterations in the interrogatory, have answered that Ray Madden was partly on the wrong side of the road, but not wholly. By erasing the word "wholly" they arrived at the same answer with fewer words.

We have no hesitancy in determing that this action under the facts in the instant case, was not prejudicially erroneous.

Assignment of Error No. 5 reads as follows:

"Plaintiff-Appellee's counsel was guilty of misconduct in his argument to the jury."

Specifically the complaint occurred while counsel for plaintiff-appellee was arguing to the jury and is as follows:

"I haven't seen Mrs. Madden until yesterday. I assume Mrs. Madden is the lady who sat here yesterday, she is a pretty lovely lady. I have nothing against her but I think it is just a little out of the way to have Mrs. Madden come in here * * *.

Mr. Altick: Your Honor, we object to that statement and we ask the Court to instruct the jury to disregard it.

Mr. Jacobson: I don't see anything wrong with that, I think she was brought in for a purpose.

Mr. Altick: You are accusing us of bringing her in for a purpose?

Mr. Jacobson: I think you are kind of hiding behind her.

Mr. Altick: I will make a personal statement, I had nothing to do with Mrs. Madden being here in the Court House."

We think that the remarks of counsel for plaintiff-appellee were improper, but we are unable to conclude that they would have any injurious effect upon the action of the jury in determining the amount of the verdict.

The second objection is as follows:

"The attorney in his argument made the following observation:

'Mr. Jacobson: Not until a long time after this accident, a very long time after the accident was any counter-claim or cross-petition filed by Mr. Madden asking for $300.00 for damages to his car. Not for a long time did he even think of making a claim against this gentleman from the McCall Publishing Company."

This argument was hardly correct in its statement of facts. While it is true that the cross-petition of defendant was not filed for several months following the filing of plaintiff's petition, yet the transcript of docket and journal entries discloses that much time was consumed by motions and demurrers directed to plaintiff's petition and that defendant was not due to plead until a very short time before the filing of his answer and cross-petition.

Counsel for defendant-appellant immediately made the comment that he did not think the argument was quite fair, since there had been a rule to plead and a demurrer between the filing of the petition and the time it was proper to file a cross-petition.

We are unable to conclude that this matter is of sufficient moment to be prejudicially erroneous.

Finding no prejudicial error, the judgment of the trial court will be affirmed and costs in this court adjudged against the defendant-appellant.

The cause is remanded for collection of costs and such other proceedings as may be required by law.

HORNBECK and GEIGER, JJ., concur.